The second case on our docket this morning is 22-50732 Me Familia Vota v. Ogg. May it please the Court. The well-defined, crystallized, and important issue in this appeal is as follows. Can a Texas DA be sued to have a federal court declare a criminal statute unconstitutional just because she holds her office, or does Ex parte Young require more? Now, I'm not going to repeat what was just argued before, but I will tell you that this Court, and I'm sure you all are aware, has already made it clear that this is the crystallized issue in this appeal that I'm arguing. The Court issued an order on October And in that order that the Court issued, it said that this appeal was an appeal, quote, of the order's denial of her sovereign immunity defense. And the Court went on to say that we decline Ogg's invitation to prematurely review these pleading and standing arguments at the motion stage of an interlocutory appeal concerning a wholly separate sovereign immunity issue. Because, of course, the issue there was the plaintiffs sought to take discovery on their statutory claims. There's obviously the open issue that is currently foreclosed, we believe, by a Fifth Circuit president, that the statutory claims contain these waivers of sovereign immunity. So we are here strictly on the issue of that question about a DA's office holding, the same office that provides her with sovereign immunity, somehow depriving her of sovereign immunity and nothing more. That's the crystallized issue that's before this Court on this particular appeal. And I understand, because I've seen the cases, I saw the case that was issued on Monday in Aitor Engineering. I saw that I was here for the argument recently on Bonk, where the standing was being discussed post-trial. I understand that standing issues sometimes require a little more development beyond the is the crystallized issue. And those issues of standing I can represent to you. You heard from a learned counsel about the status of the case going to trial. Those standing issues are being briefed right now before the District Court. We've got a deadline on Friday to file a reply brief on my client's motion for summary judgment that addresses the standing. With respect to the crystallization of the issue, the issue is fully crystallized because there are no allegations by any of the plaintiffs here that DA Ogg has done anything other than hold her office. There are no allegations that she enforced the challenge SB1 provisions against anyone, that she threatened to enforce the challenge SB1 provisions against anyone, that she enforced or threatened to enforce any criminal provisions similar to the challenge SB1 provisions against anyone. There's no allegation, Judge Southwick, that she was involved in helping to enact any of the provisions at issue or that she was even consulted by the legislature about any of these provisions. And if you don't need to take my word for it, all you need to do is look at pages 10 through 14 of the motion to dismiss before the District Court. We actually put in there, we cut and paste, snippet, all the provisions that referred to my client. Those were before the District Court. The plaintiffs came back in their response and said as follows, I'm quoting, those provisions basically you've heard the complaints talk about that DA Ogg is the constitutionally and statutorily authorized official who enforces criminal laws in Harris County. That's basically it. And the plaintiffs came back and said, quote, this enforcement authority suffices to satisfy the scintilla of enforcement requirement of the ex parte Young exception. That issue is crystallized. And then you look at the District Court order at page 8 and it cites the very, in saying that they had made their pleading burden to satisfy ex parte Young, the court cites the very provisions, not all of them but most of them, that we snippeted into our motion to dismiss. So that's the crystallized issue. Finally, why is this issue, if it wasn't clear already to the court, why is this issue so important? First, Judge Richmond, Chief, you said that they're, one of the principles of sovereign immunity is avoiding the burdens on a state elected official of litigation. And that's absolutely the underlying policy behind sovereign immunity. We referred this whole procedure that we're going through before the District Court as our client being made a, quote, litigation effigy, close quote, in being sued to somehow represent the state in this constitutional challenge. And then also you have the obvious diversion of taxpayer resources, resources of staff, of elected prosecutors, and then you have a situation obviously where advocates seek to invoke the fee shifting provisions of section 1983. So there's all those burdens. Second, the plaintiff's position on Ex parte Young has real consequences for the courts and legislation passed by the Texas legislature. If it were enough to satisfy Ex parte Young that a DA holds her or his office, where would that leave the courts? Groups that don't like criminal statutes such as the election integrity statutes here could sue any DA in any jurisdiction and create litigation between a highly motivated advocacy group on one side and a DA. Is that DA equipped with resources, attention, and motivation to raise sovereign immunity or to raise standing objections or otherwise defend that statute? Well, obviously the answer is it would depend. If the litigation strategy is devised in the right way, the DA may not be particularly concerned about defending the constitutionality of a state statute. And in that situation to use the language that the court has used before in the city of Austin versus Paxton case, you're merely making him or her in my case a party as a representative of the state and thereby attempting to make the state a party. You know the record. You know that my client offered to make a stipulation, a non-prosecution stipulation to sit on the sidelines while this litigation was carried out. The plaintiff, for whatever reason, didn't accept it. And I would represent to the court that one of the reasons why it wasn't accepted is because this policy reason is being implicated in this litigation. And this may represent a way of expanding on some of the challenges that this court is seeing in this and other cases. So Judge Southwick, you said in KP, you know, the connection requirement exists to prevent litigants from misusing the exception under Ex Parte Young. And that's the touchstone. That's the fundamental reason why we respectfully request that this court find that it is not enough to allege that a DA holds her or his office to satisfy Ex Parte Young. And our position, to be brief, is that it is, our position is completely consistent with the arc of this court's jurisprudence in the sovereign immunity area. And I think all of you, as judges, have touched on this arc in some form or fashion. So, I mean, obviously we start with first principles. We start with Ex Parte Young. Even though it was issued way back when in 1908, it's still important to read it and go back and look at it. And Ex Parte Young, as the court knows, involved a situation where there was no doubt that the Minnesota Attorney General in that case not only held the office that allowed him to enforce certain things, but had taken certain actions. You remember that case involved actions against, threatened actions against railways for not complying with rate setting legislation that the state had enacted. So in that, in this court's jurisprudence under sovereign immunity, it's not enough to have a duty to enforce the statute in question. You must also, after the and, have a demonstrated willingness to exercise that duty. That's Texas Department, Texas Democratic Party v. Abbott. That's the 2020 case. That's your case, Judge Southwick. And in Ex Parte Young, it's clear that you did have that additional step. You didn't just have an academic or legally correct statement that a certain person has the ability to enforce a statute or, in that case, a regulatory scheme. You have to show more. You have to show that additional step. And frankly, the plaintiff's argument in this case represents a step backwards from what the court has decided in sovereign immunity cases. You can go all the way back to the en banc decision in Oak Balabi. That's the 244 F. 3rd 405. That was the 2001 en banc decision. That's where the demonstrated willingness language first appeared. There was some discussion, which I don't need to tell the court. You know better than I do. There's been some discussion about whether that was binding authority because it was a, on seven votes on an en banc decision. But then Judge King wrote in the Morris case in 2014, cited demonstrated willingness as being the law of this circuit. And then, of course, in City of Austin v. Paxton, 943 F. 3rd 993, Judge Clement said that, noted the demonstrated willingness standard, but said the panel could decide the case without offering clarity on the case. But then as we go forward into cases like K.P., like the K.P. case that you authored for the court, Judge Southwick, you see that there is a very careful distinction, and the court is very careful, to only apply ex parte young when you do have some indicia of a demonstrated willingness to enforce the statute. Some step that's taken also can be referred to, as I heard earlier, about compulsion or constraint. So in the City of Austin case, for example, the court talked about the precedent and talked about how in K.P. you had the issue about the defendants having the demonstrated ability to prohibit the payment of claims under the Louisiana regime. There was an issue there in that case that you heard, Judge Southwick. There was the Air Evac case that involved rate-setting issues, and the defendants in the case were shown to have some involvement in that rate-setting process. And then in the NIGEN case, that was the case involving the enforcement of the DTPA by the Attorney General, there were threatening letters of threatening enforcement. So in all those cases that the court has decided, you see that the court has been very, very careful to make sure that it is not just a duty to enforce a statute, but it's also a demonstrated willingness to exercise that. And so we respectfully ask for reversal of the District Court's contrary holding on DAOG sovereign immunity. And absent any questions, I will reserve my five minutes for any rebuttal. Good morning, Your Honors. Christopher E. Dodge of the Elias Law Group on behalf of the LULAC plaintiffs, the OCA plaintiffs, and the MFV plaintiffs. Texas's highest criminal court has held that under the Texas Constitution, enforcing the criminal provisions at issue in this litigation is the, quote, specific duty of prosecutors like Ms. Ogg. Ogg herself has said that her right to enforce these provisions is indisputable, and she has never disclaimed her indisputable and specific duty to enforce the criminal provisions. The LULAC plaintiffs have each plausibly alleged that both they and their members wish to engage in speech and political activities that are at least arguably prescribed by the criminal provisions, but that they are chilled from doing so by the threat of enforcement from prosecutors like Ogg. Ogg is, therefore, an appropriate defendant in this action, as declaratory or injunctive relief against her will provide a meaningful remedy to the plaintiffs. Of course, as my colleague already explained, this Court should not even reach these issues because it lacks jurisdiction to do so. MR. RIEFFELER. Counsel, can I ask you a question on the jurisdiction thing? Imagine that we have an officer, like a Harris County – the Harris County Sheriff, to keep it in Harris County. And the Harris County Sheriff is sued for excessive force and false arrest, asserts qualified immunity as to one, doesn't assert it as to the other, notices an inlocutory appeal. Do we have an inlocutory appellate jurisdiction over that case? MR. CLEMENT. Your Honor, I'm not in a position to speak today as to what this Court's qualified immunity precedents say. Ms. Ogg did not cite any qualified immunity precedent in her brief. The issue here is sovereign immunity. MR. RIEFFELER. Do you think those are different? MR. CLEMENT. Well, what the Supreme Court has said is that when you evaluate collateral order jurisdiction, you look to the class of cases. And the class of cases here is sovereign immunity. And we know what this Court does in sovereign immunity cases because it's told us. It told us in Phillips. MR. RIEFFELER. Can I pause you for a second? We'll talk about Phillips. I want to hear all of that. Can I get a yes or no? Do you think that the standard for qualified immunity and sovereign immunity are different? MR. CLEMENT. I don't know today whether or not the standards are different. I do know the standard for sovereign immunity. And I think the rationale for requiring an entire suit standard that the Supreme Court set forth in Metcalf and Eddy and that this Court adopted in Phillips, I think that is the persuasive understanding of the collateral order doctrine, which is a narrow exception to Congress's imposed final judgment rule on the appellate jurisdiction of the appeals courts. MR. RIEFFELER. And you think Phillips is your best Fifth Circuit case? MR. CLEMENT. It is, Your Honor. And here's what Phillips says. It said, we hold that we have jurisdiction because the Department asserted sovereign immunity from this entire lawsuit. Simply put, the Department has always argued that a proper application of sovereign immunity would remove it from this litigation and require dismissal of all claims. We, therefore, have jurisdiction over this interlocutory appeal. MR. RIEFFELER. And what was the sovereign immunity defense as to the payment claims in Phillips? MR. CLEMENT. This Honor – Your Honor, there was not a sovereign immunity with respect to the payment claims. But that's not what this Court held. MR. RIEFFELER. Yeah. So the thing – let's just pause on it for a second, because the thing that's odd is that you're referring to a holding where we asserted jurisdiction. Can you give us a case – I mean, presumably your best case would be one where we said we don't have an interlocutory appellate jurisdiction, but I assume we don't have that case. MR. CLEMENT. I think the absence of case law on that point is important, Your Honor, which is that Ms. Ogg cannot point to a single case, not a single one. There is no Fifth Circuit case, period, where this Court expressly says, yes, we have collateral order doctrine jurisdiction over a claim-specific immunity defense that will not remove a litigant from the case. And again, here's what Phillips actually said. Here's what it said about the Supreme Court's decision in Metcalf and Eddy. It says that Metcalf and Eddy imposes, quote, a straightforward entire suit standard, a straightforward entire suit standard for the purpose of jurisdiction over interlocutory appeals in this context. I don't think this Court could have been clearer. The standard is entire suit. It's not claim by claim. It said that Metcalf and Eddy did not impose such a formulaic test, which is why it didn't matter that as to the derivative secondary claim there, there wasn't an immunity defense, because that claim went away if they lost on the first claim with respect to the defendant's immunity defense. And as Judge Easterbrook, I think, very succinctly put it in Mercer v. Magnant, the foundation for the interlocutory appeal authorized by Metcalf and Eddy is the existence right, is the existence of a right not to be a litigant. And that's the touchstone jurisdictional question here. Ms. Ogg does not assert a right not to be a litigant. There is no dispute here that even if you were to grant her relief on her sovereign immunity claim, she would still be in the case, it would not remove her from this litigation, and it would not require dismissal of all claims. That is the holding of Phillips, and that is the binding law on this circuit with respect to sovereign immunity appeals. And she does not meet that standard. And what do you do with footnote 13, where Judge Elrod specifically says this is not the first time that we have asserted interlocutory appellate jurisdiction over a case where the defendant does not assert sovereign immunity as to all claims? I think Her Honor was correct in characterizing that as a factual matter, but the question is what actually binds this Court. And Bank Pass is no precedent at all on the issue of the entire suit standard, because no party to that appeal raised this issue. The Court did not address that issue. And as the Supreme Court has made clear ad nauseam, when a potential jurisdictional defect is neither noted nor discussed in a Federal decision, the decision does not stand for the proposition that no defect existed. That's Arizona Christian School Tuition Organization v. Winn, 563 U.S. at 144. As Justice Scalia said more generally, judicial decisions do not stand as binding precedent for points that were not raised, not argued, and hence not analyzed. So let's talk about two points that are raised and are analyzed, and maybe you can explain how we're supposed to do this. Because pre-Phillips, we have two cases, Chrissy and Loya, which both say we apply exactly the same interlocutory appellate jurisdiction standard to qualified immunity and sovereign immunity, right? So those are published precedents from our Court. We are bound by them. We apply the same standard. The Supreme Court has said as to qualified immunity, we go claim by claim. We do not need to have entire suit. And then against that, you point to a sentence of dicta, right? Because as you, I think you agree with me, it's not as if Phillips dismisses something for lack of jurisdiction. It's just a way that Judge Elrod is explaining the rule in that case. So against Supreme Court precedent and two published cases that predate and therefore control under our rule of orderliness, we're supposed to take a sentence of dicta from Phillips and do what exactly? I have to disagree with the idea that the standard in Phillips is dicta. And again, I think the Court is very clear. It said that we hold jurisdiction because the Department asserted sovereign immunity. Sorry, let me be more specific. I don't mean to, I don't mean dicta in the sense of like, you know, it's not part of a sentence that says the word holding. I mean it in the sense that the outcome of the case is to assert interlocutory appellate jurisdiction over an appeal. And therefore, she is not saying we can't do this because it doesn't meet the entire case standard. It's a way she's explaining the rule of her case, of the case in front of the panel there. So what I'm trying to understand is how do you reconcile that sentence with two published Fifth Circuit precedents that say we apply the same standards to sovereign immunity and qualified immunity, along with the Supreme Court saying in Barron's that qualified immunity must be claim by claim and this entire suit standard cannot possibly apply because it is not sufficiently protective of the prerogatives of the sovereign. I would point to Metcalfe and Eddy, which is the binding law here from the Supreme Court with respect to interlocutory sovereign immunity appeals. And as this Court noted repeatedly in Phillips, when it adopted this entire suit rule, it noted that Metcalfe and Eddy explained at length that the order, the collateral order doctrine jurisdiction, again, an exception to the final judgment rule, was only justified because of a claim immunity from suit, which is lacking here. And so I think at the end of the day, this Court is bound by Metcalfe and Eddy and Phillips with respect to collateral order jurisdiction on the sovereign immunity issue. Now, Aug has also raised far broader standing arguments with respect to the whole host of claims raised against her and not merely the sovereign immunity ones. And there's no dispute that this Court lacks collateral order jurisdiction over standing issues, because standing is canonically an issue that is reviewed after final judgment, as the Supreme Court and this Court have long noted. So to even reach these standing issues, the Court would first have to find that it has collateral order doctrine jurisdiction over the sovereign immunity issue, which it lacks under Phillips. But then second, it would have to find that it can exercise its discretion for pendent jurisdiction over her standing arguments. So can I agree with you? Look, just for the sake of discussion, let's agree that you're right about the standing thing. It strikes me that the best cases you have on this enforcement nexus as to the DA are Osterwich, which we appreciate, the 28J letter, and Speech First, which Osterwich obviously relies, both of which are standing cases. Well, Your Honor, the explanation in Osterwich and Speech First basically stands for the very common sense proposition that when a state legislature passes a criminal law, it's fair for someone who engages, or at least arguably engages in the conduct prescribed by that law, to believe that a federal prosecutor, that no less than the Texas Constitution charges with the duty of enforcing that law, will fulfill that duty in the absence of an unambiguous disavowal, which is lacking here. So I don't think that really turns on a question of Article III. It just stands for sort of a common-sense question about how enforcement works under a particular statutory regime. So we can use the standing cases for that. We just can't use the standing cases that are go against you. Well, this goes to the question of pendent jurisdiction, Your Honor, which is rarely invoked, highly disfavored, and arguably not even authorized by Congress. And to even get to pendent jurisdiction, it's Ms. Ogg's burden to show that you cannot even possibly resolve the sovereign immunity question without getting to standing. Numerous circuit courts, the Fourth, the Sixth, and the Eleventh, have squarely said, no, you can do these separately. And Ogg has provided no countervailing explanation. Now, of course, even if you were to disagree with those circuits, and the Fifth Circuit has sometimes reached subject matter questions when there's a proper sovereign immunity appeal, you can still exercise your discretion to not reach those issues, as you should, because in every single one of the cases Ogg points to, the subject matter question jurisdiction, which typically wasn't even standing, went to whether or not the litigation was even proper in Federal court, period, which is not the question here at all. And there's no judicial economy gained by continuing the piecemeal appeals we have already seen in this litigation that has, as my colleague noted, a host of defendants, a host of claims. Ms. Ogg is free to raise these issues after final judgment. As counsel noted, she's already raised them again now at summary judgment below, and that motion is pending. And, again, the orderliness of the final judgment rule should be remembered here, which is that these piecemeal appeals on an immunity defense to this claim, a standing argument from this defendant on that claim, is not an orderly way to hear appeals in complex litigation. If there are no other questions on jurisdiction, I'll turn to sovereign immunity. As I said at the outset, the highest criminal court in Texas has told us that it is Ms. Ogg's specific duty to enforce these laws, and that is because the Texas Constitution states she shall represent the State in all such matters. Ms. Ogg admitted before the District Court that she has the indisputable right to enforce. That's in the record at 10799. She has never disclaimed that duty, nor has she promised the plaintiffs that she will not permit the Attorney General to prosecute these crimes within Harris County. These undisputed and well-pled facts more than satisfy the requirements of Ex parte Young, which in its own words requires that the official, quote, must have some connection with the enforcement of the Act. MR. RIEFFELER. Counsel, why is the stipulation not a complete answer? I recognize your point that the stipulation — well, one, you refused it, but she offered it. And I recognize that your answer is, well, it wasn't a really good enough offer, because she didn't say that she would permanently and forever and always never enforce these statutes under any set of circumstances. The thing that I'm troubled by is that one of the issues that is sort of wrapped up in all of this is that Article III jurisdiction is intended to have concrete cases where we know we have the right plaintiff and we know we've got the right defendant, we know we've got actual adversariousness. And so all of those things are difficult when you bring a pre-enforcement action. It's not impossible. Obviously, there's all sorts of circumstances where pre-enforcement actions are not only necessary, or not only good ideas, but also sometimes necessary. So I don't mean that it's always a problem. I just mean it's always a concern in the sense that we need to be focused on it. So if we have a defendant who comes in and says, I swear on a stack of Bibles I won't enforce this until the litigation is complete and we figure out the lawfulness of it, that sure seems like it answers the Ex parte Young question, in particular after A&R Engineering, that says that once she makes some — you know, we get to the end and there's some, you know, prospect of enforcement, then of course this is without prejudice. You can come back and sue them. A few things in there, Your Honor. First, fundamentally, there is no agreement in place and Ms. Ogg can prosecute the plaintiffs whenever she wishes. And as this Court held in Seals v. McBee, if a prosecutor can change her mind and prosecute, a plaintiff is not required to live under the specter of prosecution for violating a potentially unconstitutional law with nothing more than a noncommittal response as a protection. So that does resolve the issue here. The second does go to the context of the offer itself. And as we explained in our briefing, Ms. Ogg's offer was far from complete. That offer was an attempt, perhaps understandable, for her to get out of this litigation. But as a result, she would not have been bound by any final judgment in this case. And thus, even if we were to prevail against the Tarrant County — Tarrant County is not in this case, but, say, the Travis County DA, that would bind the Travis County DA, but at the end of the litigation, Ms. Ogg would still be free to enforce. And that's — that's the deficiency there. So is there a universe where certain kinds of pre-litigation offers theoretically could, you know, remove Article III litigation? It's possible, Your Honor, and we don't take a position contrary to that. But under the facts of this case, Ms. Ogg did not agree to be bound by the final judgment, did not agree to foreclose letting the Attorney General, who has a demonstrated interest in enforcing these laws, come in and prosecute in Harris County. And so the plaintiff said that's not enough. And as a result, there is adversity between these — But there is the concern, the underlying concern — maybe not in this case. I'm not suggesting it's there. But hypothetically, that you — the plaintiff could choose a county where they knew the DA would never, under any set of circumstances, enforce the criminal statute. And if push came to show and say, I think it's unconstitutional, I'm never going to enforce it, but wouldn't say so in the litigation because that DA hoped that it was declared unconstitutional. I mean, you don't really have adversaries. So that's — that's a concern where you don't have a DA saying, I want to prosecute him or her. I think that's a fair concern, Your Honor, but a few points. One, in Texas, that is a reality of Texas's choice to adopt a decentralized election system, including with respect to how it prosecutes election crimes. Plaintiffs have to go or often have to go to local officials. Another, I think, something that would address your concern, Chief Judge Richman, is that under Texas law, the Attorney General retains a right to intervene in those sorts of cases to defend the constitutionality of Texas's law, which is obviously a fair prerogative of the Attorney General. And the third is, I think, what you yourself acknowledged, Chief Judge Richman, that — which is that this case shows that that risk is not always present, because here plaintiffs sued Harris County D.A. Aug because that is a major racially diverse county in which they operate, in which the plaintiffs' members live and vote and participate in the democratic process, and so they need relief in Harris County. And here we are before this panel arguing with Harris County about whether or not she's a proper defendant to the case. So I think that's a valid concern, but I think there are proper safeguards to ensure that you don't find yourself in circumstance. But for ex parte young purposes, looking at a Federal court getting — sticking their nose into this, I mean, we do have the requirement that prosecution has to be threatened, and we don't have a threatened prosecution here. Well, what the Supreme Court recently said in Whole Women's Health is that when you have State officials who have an enforcement connection, where they have the ability to enforce at any time, that is sufficient at the pleading stage for purposes of ex parte young. I didn't hear my colleague discuss Whole Women's Health, but I think it's the determinative case here with respect to sovereign immunity. You know, as Justice Gorsuch said there, eight members of the Court agreed that sovereign immunity did not bar the Petitioners from bringing pre-enforcement challenge in Federal court. And that's because even though the law was designed to have a private enforcement scheme, the Supreme Court at that stage found that there were four State officials who had a sufficient enforcement connection to enforce. And that extended to three officials who had purely discretionary duties of a civil nature, including Cecile Young, the Texas Executive Commissioner of the Health and Human Services Commission, who under State law may deny, suspend, or revoke an abortion clinic's license. The Court said that on that basis alone, Ms. Young was a proper defendant. The same is true of the defendant who was the head of the Texas Nursing Board, who had the right to may impose an administrative penalty. At the pleading stage, the Supreme Court said that is enough. And it is hard to see how that could be enough there. But what plaintiffs have alleged here, which is that the Texas Constitution assigns Ms. Ogg this duty, she has not disclaimed it, she admits her power to enforce is indisputable, and plaintiffs have plausibly alleged that they wish to engage in conduct that will put them within the ambit of the law. That certainly passes muster under Whole Woman's Health. Counsel, can you think of a criminal statute that the Texas legislature could conceivably pass? I'm not talking about voting, just any criminal statute that they could possibly pass under any set of circumstances where you and your clients would not have a preenforcement challenge against the district attorney? I think, you know, any plaintiff, obviously, once they bring a preenforcement challenge to a criminal law, they don't just get to waltz into court. They need to plausibly violate it. I don't think, you know, a man... I'm sorry. I should, I appreciate your answer. I asked the question terribly. If you would allow me to rephrase, because I'm not talking about standing. I just, ex parte young. I'm only concerned about ex parte young. And my question is, is the district attorney the proper defendant for every conceivable single thing that the Texas legislature could ever do, including class C misdemeanors that are fine only? I think this gets to what this Court said just weeks ago in Osterwich, and before that in Speech First v. Fenves, which is that when you have a newly enacted non-morbid law that an enforcer or a prosecutor has refused to, you know, put their hand on that stack of Bibles and say, never in a bajillion years. If you don't have that, then it's a fair inference, particularly at the pleading stage, to say, well, yeah, that prosecutor's going to enforce that law when someone violates it. That's a fair inference. You know, in Osterwich, it was in the record at the summary judgment stage that Harris and there this Court found that the plaintiffs had standing. I recognize you're asking a slightly different question with respect to ex parte young, but I think that common sense inference is the same. And so it's hard to see how someone could have standing in a case like Osterwich against Ms. Young, but not someone here. If Ms. Ogg offered you a stipulation, and obviously I have no idea if she would, just hypothetically, if she offered you a stipulation that said, I won't enforce the statute or any of these statutes until the litigation is over, that's sort of paragraph one. Paragraph two, if a court holds that the statutes are unconstitutional, I won't, even if I'm not a party, I won't enforce the statutes against you. Would that solve the ex parte young problem? I'm obviously not in a position to commit to that today, Your Honor. I think what you are hypothesizing is at least inching closer towards something that maybe might be a, you know, in Fenves they talk about how you need compelling contrary evidence. We don't have that here. So if you're willing to at least entertain my question, I assume that your thought is that if she wasn't a party and you proceeded against, say, the District Attorney Garza in Travis County and you didn't proceed against her, District Attorney Ogg, that you could get a declaration of the unconstitutionality in the court upheld by the Fifth Circuit, upheld by the Supreme Court of the United States, and that DA Ogg, because she wasn't a party, would nonetheless enforce against you? That's the concern? Yeah, certainly at this stage, yeah. You know, judgments have force. And in a decentralized state like Texas, where you have 250 district attorneys, I might be wrong there, you guys probably know better than me, but that is, that's a concern, that you need defendants to be bound in an ironclad manner so that you don't have a criminal prosecution against you in a way that would violate a constitutional right. Well, if the Texas Court of Criminal Appeals held it's unconstitutional, as between in a suit involving Travis County, no court in the State is going to say, well, that's only binding in Travis County. That's ridiculous, with all due respect. But that's not the case here. There's there's... Well, that's what you were just arguing. I was arguing if a Federal court found, with respect to a separate defendant, that there would remain some residual prosecution threat that would not remove a district attorney entirely from the ambit of Ex parte Young and Article III. Are there any further questions? Very briefly, if I might, I think I've got three or four points. I'll start, I had it on my list, Chief, but I'm going to elevate it because you just raised it, which is the issue of this whole business of having to have an agreement that a DA will not enforce a statute that is declared unconstitutional by a Federal court. Frankly, I think that is a complete wild goose chase, a red herring, however you want to characterize it. But the statute that a Federal court has declared to be unconstitutional, I don't think... What about Whole Woman's Health? Whole Woman's Health does not provide that it's a talismanic. We allege that someone has X, Y, or Z duties, and that's enough. As you know very well from the history of that case, that case went through a lot of permutations up and down, back and forth, and the most important piece of Whole Woman's Health, I think, is the general principle that's stated in the decision itself, which is that these principles of Ex parte Young or standing or whatever, quote, do not provide an unqualified right to pre-enforcement review of constitutional claims in Federal court. I don't see, Judge, and we've briefed it fully, I've got it right here, I don't see anything in Whole Woman's Health that changes that arc of this Court's sovereign immunity jurisprudence, as I discussed in the opening argument. In other words, this Court's standard of not only a duty, but also demonstrated willingness to act, are both independent but connected predicates towards a finding that Ex parte Young has been satisfied. Now there were certain arguments by my learned colleague that made me think of this other argument that's being made, which is that in a lot of the briefing you see an argument that, well, you know, this Court has said before in decisions that if you can't show that the party, like some of these state defendants, have enforcement authority at all, then that ends the inquiry. And there is a line of cases, you know, Judge Southbrook, I think you've worked on some of these too, that is a rule. But that doesn't mean that you don't also, in order to meet the test, to get over that hurdle, that you the duty also, Chief, I think it's embedded in your question, the duty that is imposed on DAs in the State of Texas is not to prosecute any particular case, much less a hypothetical case against one of the plaintiffs, and by the way, too deep in the weeds, but there are only, of all the plaintiffs that are alleged to be in the case, there are two individuals who are alleged to have voted in Harris County, and they are alleged to have voted by drive-through voting, and their complaint is that, or what they've stated, is that they want more hours and more access to voting. So that's it. The rest of the plaintiffs that have any tie to Harris County are the organizations, and they're making the kind of the training and the, you know, trying to divert funds to train people on the law, that kind of argument. So, but the point is that the duty is not to prosecute any particular individual, that you all deal with issues of prosecutorial discretion all the time, and that prosecutorial discretion is based on the idea that the duty is to see that the law is done. Real quick with my remaining seconds. Collateral order doctrine, I didn't even argue it because I think it's squarely foreclosed by this Court's precedent. I've got the, we cited the Phillips footnote, footnote 13, it's right here in our brief. We also cited the Bank Pass case, which says, and I quote, that you can have a appeal even though, quote, a sovereign immunity win on that claim would not dispose of the entire lawsuit. I don't think that's an issue. And then, and then, and then I'm going to stop there and ask the Court if you have any questions, but we would, again, ask the Court to take this crystallized, narrow, fully developed issue and make sure it's clear to everybody in the State of Texas, including the plaintiffs here, you cannot file, cannot sue a DA as a means of declaring a criminal statute unconstitutional simply with an allegation that that DA holds his or her office. And even though this is a, as the counsel said correctly, the system of enforcement of criminal laws in Texas is local, they haven't sued every DA, and there is no need in this situation to take a step backward on sovereign immunity principles that this Court has, has clarified over the years. Thank you. Thank you. That will conclude the arguments for today. The Court stands in recess until 9 o'clock in the morning. Thank you.